UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States District Court
Southern District of Texas
*Filed*

JAN 1 0 2005

Michael N. Milby, Clerk
J E H

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| VS | § § | CRIMINAL NO. 04-137 |
| DOLORES COMPEAN, JR. | § § § | |

## PLEA AGREEMENT

COMES NOW the United States of America, by and through Michael T. Shelby, United States Attorney for the Southern District of Texas, and Mel Pechacek, Assistant United States Attorney, and the defendant, Dolores Compean, Jr., and the defendant's counsel, under Rule 11(c)(1)(A)&(B) of the Federal Rules of Criminal Procedure, and state that they have entered into an agreement, the terms and conditions of which are as follows:

1.  The defendant, Dolores Compean, Jr., agrees to plead guilty to Count Twenty-four (24) of the Indictment in this case. Count Twenty-four (24) charges the defendant with: Aiding and abetting the structuring of transactions to evade reporting requirements, in violation of Title 31, United States Code, Section 5324. The penalty for this violation is imprisonment of up to 5 years, and/or a fine of up to $250,000 (section (b)(3) of Title 18, Section 3571), a special assessment of $100, and a term of supervised release of at least 3 years.

2.  The defendant also acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then the defendant may be imprisoned for the entire term of supervised release without credit for time

already served on the term of supervised release prior to such violation. The defendant cannot be placed on probation or have the imposition or execution of the sentence suspended. Further, the defendant is not eligible for parole.

3. As part of this agreement, and if the defendant persists in his plea of guilty through sentencing, the United States agrees as follows:

(a) The United States will not oppose a finding by the United States Probation Office or the Court that the defendant has accepted responsibility under § 3E1.1(a) and (b) of the United States Sentencing Guidelines (U.S.S.G.);

(b) The United States will move to dismiss the remaining counts of the Indictment against the defendant at sentencing;

(c) The United States agrees it will not further prosecute the defendant for violations of federal law committed within the Southern District of Texas of which the United States is presently aware; and

(d) The United States agrees that from the evidence presently known concerning the defendant's participation in the offense alleged in Count Twenty-four (24) of the Indictment in this case, the monetary value the defendant should be held responsible or accountable is no more than $16,000.

4. The parties understand this agreement does not carry the potential for a motion for departure under Section 5K1.1 of the USSG and Title 18, USC §3553(e).

5. Under U.S.S.G., § 1B1.8, self-incriminating information disclosed by the defendant that was unknown to the government at the time it was disclosed will not be used against the defendant in determining an applicable range of imprisonment under the Sentencing Guidelines if

the government determines that the defendant has otherwise complied with the terms of this agreement.

6. The defendant represents, by signing this agreement, that he has no exculpatory testimony or information regarding any other defendant listed in the Indictment.

7. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and the defendant; it does not bind any other United States Attorney.

8. The defendant agrees to the entry of an agreed order of forfeiture of real property, improvements, and appurtenances, titled to Dolores Compean, Jr., located at 7033 Dillon, Houston, Harris County, Texas, and legally described as

> The East 75 feet of Lot 16 and the adjoining West 50 feet of Lot 17, in Brlock 20 of Garden Villas, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 8, Pate 3 of the map records of Harris County, Texas;.

The defendant further agrees and stipulates that where property subject to criminal forfeiture under Title 18, United States Code, § 982: (1) cannot be located upon the exercise of due diligence; (2) has been transferred or sold to, or deposited with, a third party; (3) has been placed beyond the jurisdiction of the court; (4) has been substantially diminished in value; or (5) has been commingled with other property which cannot be divided without difficulty; the Court shall order the forfeiture of any other property of the defendant up to the value of the property described above. The defendant further agrees to take whatever steps are necessary to convey clear title to forfeitable assets to the United States, including, but not limited to, surrendering of title, signing a consent decree, stipulating to acts regarding the transfer and basis for the forfeiture, and signing of any other documents necessary to effectuate such transfers. The defendant also agrees to direct any financial institutions which have custody of assets to turn over all funds and records of such assets to the

United States. Defendant also agrees to testify truthfully in any forfeiture proceeding as requested by the United States.

9. The defendant, by entering into this Plea Agreement, also waives any right to have facts that the law makes essential to punishment either: (1) charged in the Indictment; or (2) proven to a jury. The defendant explicitly consents to be sentenced under the applicable Sentencing Guidelines and to have the sentence based on facts to be found by the sentencing judge beyond a reasonable doubt. The defendant explicitly acknowledges that his plea to the charged offense authorizes the Court to impose any sentence, up to and including the statutory maximum under the relevant statute(s) that is also authorized by the Sentencing Guidelines.

10. The defendant understands that the sentence to be imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all of the obligations under this plea agreement. The defendant is aware that Title 18, United States Code, § 3742, affords a defendant the right to appeal the sentence imposed. Knowing that, the defendant waives the right to appeal the plea, conviction and sentence (or the manner in which it was determined) on the grounds set forth in Title 18, United States Code, § 3742, except for an upward departure. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, § 3742(b). The defendant is also aware that the United States Constitution and the laws of the United States, including Title 28, United States Code, § 2255, afford the defendant the right to contest or "collaterally attack" his conviction or sentence after his conviction has become final. Knowing that, the defendant knowingly waives his right to contest or "collaterally attack" his plea, conviction and sentence by means of any post-conviction

proceeding.

11. In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive.

12. The defendant is aware that the defendant's sentence will be imposed in accordance with the United States Sentencing Guidelines (U.S.S.G.). The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty.

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right: (a) to bring its version of the facts of this case, including its file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report; (b) to dispute sentencing factors or facts material to sentencing; (c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and (d) to file a pleading relating to these issues, in accordance with § 6A1.2 of the Sentencing Guidelines and Policy Statements.

14. Prior to or at the time of sentencing, the defendant will pay to the United States Department of Justice a special assessment in the amount of one hundred dollars ($100.00) per count of conviction, as required in Title 18, United States Code, § 3013(a)(2)(A). The payment will be by certified check payable to Department of Justice, c/o U.S. Attorney's Office. P. O. Box 61129,

Houston, Texas 77208.

15. The defendant understands that the Court is permitted, under U.S.S.G., § 5E1.2(i), to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment, term of supervised release and probation, if any are ordered.

16. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.

17. The defendant agrees to file a sworn financial affidavit and that any fine or restitution imposed by the Court will be due and payable immediately. The defendant also agrees not to attempt to avoid paying any fine or restitution imposed by the Court through any proceeding under the United States Bankruptcy Code.

18. The defendant understands that upon pleading guilty, the Court may ask the defendant questions about the offense to which he has plead guilty, and any answers the defendant gives under oath, on the record and in the presence of defense counsel, may later be used against him in a prosecution for perjury or false statement.

19. The defendant represents to the Court that defendant is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Agreement. The defendant understands that the rights of defendants include the following:

(a) If the defendant persisted in a plea of not guilty to the charges, the defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States and the court all agree.

(b) At a trial, the United States would be required to present its witnesses and other

evidence against the defendant. The defendant would be able to confront those witnesses and his attorney would be able to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

(c) At a trial, the defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he could testify on her own behalf.

20. The defendant understands that nothing in this plea agreement, however, will restrict access by the United States Probation Office or the Court to information and records in the possession of the United States, including that obtained from the defendant.

21. The defendant will plead guilty because he is, in fact, guilty of the charge contained in Count Twenty-four (24) of the Indictment. In pleading guilty to Count Twenty-four (24), the defendant acknowledges the facts as stated below are true, and were the case to go to trial, the government would be able to prove those facts beyond a reasonable doubt. The parties further agree that this factual basis, as stated below, does not include all relevant conduct that may be considered by the Court for sentencing purposes:

## FACTUAL BASIS

Carl and Debra Schroeder listed a home for sale at 7033 Dillon in Houston, Texas, and were told by their realtor, Carlos Garcia, that Leonardo Compean wanted to purchase the property. Compean and his wife and children and an unknown person with them were the only persons Garcia showed the home to. Garcia told Mrs. Schroeder that the Hispanic couple were the purchasers of

the home the day the Compeans looked at the house. Mrs. Schroeder's only conversation with Compean that day was to ask him to move his truck.

The Schroeder's were asking $150,000 for the property. It had been appraised for $135,000. The Schroeder's insisted they be allowed time to find another house before they closed on the property. The Schroeder's were having trouble with this, and the realtor began pressuring them to close, saying that Leonardo Compean wanted the property quickly. The closing took place on August 9, 2002 and was handled by Texas American Title Co.

A number of payments were made by Compean's father and sister to the title company before the closing date. Overall, before and after the closing, Dolores Compean, Jr., (Compean's father), and Leticia Compean Matthews (Compean's sister), have paid $48,100 in cash, money orders and cashier's checks toward the Dillon property from May of 2002 up to August of 2003.

The first payment toward the home was $500 cash by Dolores Compean, Jr., ( "Dolores") to the title company on May 15, 2002. Leticia Compean Matthews ("Leticia") deposited $8,000 cash into her account at Frost Bank on May 24, 2002, withdrew the money the same day by obtaining a cashier's check, and then gave an $8,000 cashier's check to the title company on May 28, 2002. Dolores deposited $8,000 cash into a joint account he had with Leonardo Compean at First Educator's Credit Union on May 29, 2002, withdrew the money the same day by obtaining a cashier's check, and then gave an $8,000 cashier's check to the title company on May 30, 2002. Leticia deposited $8,000 cash to Frost Bank on June 11, 2002, withdrew the money the same day by obtaining two cashier's checks, each in the amount of $4,000, and then gave the two $4,000 cashier's checks to the title company the same day. Dolores deposited $8,000 cash into his account at Metro Bank on June 13, 2002, withdrew the money the same day by obtaining an $8,000 cashier's check,

and gave the cashier's check to the title company the same day. Leticia deposited $8,000 cash into her account at Frost Bank on June 13, 2002, withdrew the money the same day by obtaining a cashier's check, and then gave an $8,000 cashier's check to the title company the same day (COUNT 24). Leticia deposited $7,500 to Frost Bank on June 18, 2002, withdrew the money the same day by obtaining a cashier's check for the same amount, and then gave the cashier's check to the title company the same day. Dolores paid $100 in cash to the title company on June 20, 2003 for earnest money.

The Schroeders went to the closing on August 9th expecting to meet with Leonardo Compean, but instead met his father, Dolores. The representative from the title company spoke with Dolores in Spanish. The Schroeder's were told by the representative that because the selling price was $15,000 above the appraisal, another $15,000 had to be furnished by the buyer before the closing could take place. Dolores left the closing and returned with $15,000 cash in one hundred dollar bills, which went directly to the Schroeders. The representative explained to the Schroeder's that Dolores thought his son had already brought all the money that was needed and all Dolores had to do was sign the papers.

World Savings provided $97,854.62 to the title company on August 9, 2002, and held a mortgage lien against the property. All mortgage payments were subsequently made by Dolores or Leticia.

Dolores paid $5,912.89 by submitting six postal money orders on October 7, 2002, all obtained the same day. Dolores then submitted money orders from November 2002, thru August 2003, in the range of $784-$1000 per month.

Leticia deposited $5,000 to Frost Bank on November 6, 2002, withdrew the money the same

day by obtaining a cashier's check for the same amount, and then gave the cashier's check to World Savings the same day. Leticia deposited $3,000 to Frost Bank on January 8, 2003, withdrew the money the same day by obtaining a cashier's check for the same amount, and then gave the cashier's check to World Savings the same day.

Finally, Leticia deposited $4,000 to Frost Bank on February 6, 2003, withdrew the money the same day by obtaining a cashier's check for the same amount, and then gave the cashier's check to World Savings the same day.

22. If the defendant should fail in any way to fulfill completely all of the obligations under this plea agreement (at any time including after sentencing), or engage in any felonious criminal activity during the life of this agreement, or fail to appear when required, the United States will be released from its obligations under the plea agreement.

23. Whether the defendant has breached any provision of this plea agreement, if contested by the parties, shall not be determined by any Court at any hearing, whose decision in that regard is final.

24. This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. The defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and

voluntarily because he is guilty. Any modification of this plea agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

_____
DOLORES COMPEAN, JR.

SUBSCRIBED AND SWORN TO BEFORE ME on this the 10th day of January, 2005.

MICHAEL N. MILBY, Clerk

By: _____
Deputy Clerk

APPROVED:

_____
Mel Pechacek
Assistant U.S. Attorney

_____
Robert Nino
Counsel for Defendant

11

I have consulted with my counsel and fully understand all my rights with respect to the indictment pending against me and I understand the elements of the offenses charged against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the <u>United States Sentencing Guidelines</u> which may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I am entering this agreement and plea of guilty freely and voluntarily in the exercise of my own good judgement, because I am guilty. Further, I understand that no one who has been convicted of a felony offense may possess a firearm. It has been explained to me that I cannot receive a firearm now and will not be able to possess a firearm after I am sentenced.

Date: /-10-05

_____
Dolores Compean, Jr., Defendant

I have fully explained to the defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the United States Sentencing Guidelines and I have fully explained to the defendant the provisions of those Guidelines which may apply in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one.

Date: /-10-05

_____
Robert Nino
Counsel for Defendant